UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

Roland Mote,                                             Case No. 3:16 CV 2518

       Petitioner,                                      JUDGE JAMES G. CARR

   v.

                                      OPINION AND ORDER

State of Ohio,

       Respondent.

*Pro se* Petitioner Roland Mote filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Mote is currently incarcerated in the Ross Correctional Institution, having been convicted in 2015 in the Mercer County Court of Common Pleas on one count of engaging in a pattern of corrupt activity and three counts of breaking and entering.

**Background**

Mote was the passenger in a vehicle that was the subject of a traffic stop in Celina, Ohio on January 4, 2014. Celina Police Chief Thomas Wale initiated the stop. *State v. Mote*, No. 10-15-05, 2015 WL 5320003, at *2 (Ohio Ct. App. 3 Dist. Sept. 14, 2015). After approaching the driver and indicating the reason for the stop, Wale returned to the cruiser and called for the Celina K-9 unit to perform a "walk around" the vehicle. *Id.*

The K-9 unit arrived four minutes after receiving the call. Wale was in his cruiser writing the ticket when the unit arrived. Officer Harting took the canine around the vehicle and reported to Wale that it had alerted to the presence of illegal substances in the vehicle. *Id.*

At that point, Wale stopped writing the traffic citation, instructed the driver to step out of the vehicle, and conducted a pat-down search of him. *Id.* While Wale was talking with the driver, another patrolman arrived at the scene. *Id.* Harting instructed Mote to exit the vehicle, and while the other patrolman conducted a pat-down search of Mote, Harting searched the vehicle. *Id.* It appears the evidence seized from the vehicle led to the arrest of Mote and Miller.

Mote was indicted on January 23, 2014 by the Mercer County Grand Jury on one count of engaging in a pattern of corrupt activity and five counts of breaking and entering. He filed a Motion to Suppress the evidence, arguing he was unlawfully detained and arrested, and asking the court to exclude any evidence seized as part of his arrest. The court conducted a hearing and denied the Motion.

A jury trial was conducted from January 27, 2015 through January 30, 2015. At the conclusion of its deliberations, the jury found Mote guilty of Counts One, Four, Five, and Six. *Id* at *1. The State dismissed Counts Two and Three of the indictment. *Id*. On February 3, 2015, the court sentenced Mote to seven years in prison as to Count One, twelve months in prison as to Count Four, twelve months in prison as to Count Five, and 12 months in prison as to Count Six. The court ordered Mote to serve the terms consecutively for an aggregate sentence of 10 years. *Id*.

Mote filed a timely direct appeal of his conviction and asserted one assignment of error: the trial court erred in overruling his motion to suppress evidence. He argued he was unlawfully detained because he did not reasonably believe he was free to leave. He claimed any search of the

vehicle was the product of the unlawful seizure and therefore a violation of his Fourth Amendment rights. The Ohio Third District Court of Appeals held that the seizure was reasonable and upheld his conviction. Mote did not appeal that decision to the Supreme Court of Ohio. He did not file a Petition for Post Conviction Relief.

Mote filed an Application to Reopen his Appeal under Ohio Appellate Rule 26(b) seeking to add forty assignments of error to his original appeal. The Ohio Third District Court of Appeals denied the Application, stating that Mote did not show any genuine issue as to whether he was denied the effective assistance of appellate counsel. He appealed that decision to the Supreme Court of Ohio, asserting forty-two grounds for relief. The Supreme Court declined jurisdiction on April 20, 2016. *See State of Ohio v. Mote*, No. 2016-0158 (Ohio S. Ct. Apr. 20, 2016).

Mote has now filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In his Petition, he asserts forty-two grounds for relief:

> 1. He was handcuffed and shackled in the presence of potential jurors;
> 2. His right to a speedy trial was violated;
> 3. He was held on excessive bail;
> 4. He was held on trumped up drug charges for 5 days;
> 5. Officers tampered with the crime scene;
> 6. Officers did not test the needle found in his possession;
> 7. The prosecutor lied about forensic evidence;
> 8. The prosecutor lied about tool marks matching;
> 9. The search warrant for his cellphone was haphazard and search exceeded the parameters of the warrant;
> 10. His lawyer, the prosecutor and the judge changed his court dates;
> 11. Hair and Fiber samples found were not submitted for DNA tests;
> 12. He was charged with engaging in a pattern of corrupt activity for three breaking and entering offenses that occurred between December 27, 2013 and January 4, 2014 when he had an alibi for one or more of those days;
> 13. He was in jail during one of the burglaries for which he was charged;

-3-

14. The fiber on the wooden box from which money was taken could not have been from his glove;
15. His co-defendant in his interviews could not give details until after the discovery packet was given to them;
16. The police testimony painted him in a bad light knowing the jury members were family or friends;
17. None of the attorneys asked his co-defendant about the plea deal he had taken;
18. Nobody pointed out to the jury that police only had a partial shoe cast, that his phone GPS showed it was at a business three days before, and that it did not snow on the night in question;
19. The jury was not shown the shoe cast;
20. Jen McCoy was ordered to delete certain parts of the security tapes;
21. His attorney would not let him show the jury his left arm which is clearly covered in tattoos when suspects in the video do not have tattoos.
22. The prosecutor did not call Nike or Stanley to get statistics on what they sell in that area and how popular those brands are;
23. There were no working videos when he was stripped searched in a parking lot when temperatures were below zero;
24. Police did not check the cell towers to show his location when the burglaries took place;
25. Police did not question workers about their shoes or what shoes customers wore because the shoe prints were not near the point of entry;
26. No one pointed out what footwear he was wearing;
27. No one pointed out that the tile worker was wearing a solid black coat and he was wearing a camouflage coat with black spots. The other video shows a person in a red coat. He indicates no red coat was found in his possession;
28. The jurors were not shown pictures of different shoe prints. They were only shown prints which were attributed to Mote;
29. He did not receive a suppression hearing on his cell phone search;
30. No one brought up fibers that were found that resembled his property;
31. His trial date was changed after an attorney conference so police could get friends and family on the jury;
32. The jury was not told he was on lock picking and safe cracking websites for two or three seconds;
33. Evidence was not promptly taken to the Bureau of Criminal Investigation for testing;

      34. Prosecutor lied about fibers and shoe prints matching, suggesting they could not have come from someone else;
      35. His attorney and the prosecutor did not call independent experts to examine the fiber and shoe print evidence;
      37.[1] The jury was not shown stacks of money confiscated so they could see it could not add up to what the prosecutor said it did;
      38. The police testified that it snowed on the night in question when weather reports indicate it did not snow;
      39. The photo of the suspects was not enhanced;
      40. the jurors were directly related to the police or were friends with the officers, or were victims of other crimes;
      41. No other show casts were taken;
      42. Jurors were not told he had only $ 2.50 in his pockets when arrested even though more than that amount was missing;
      43. His lawyer would not allow him to take the stand in his own defense.

All of these claims except numbers 31 and 43 were raised in his Rule 26(b) Application. Petitioner asserted that his trial date was changed but he did not assert it was to allow the police to get friends and family on the jury as he did in ground 31 of his Petition. It does not appear he raised the issue of testifying on his own behalf in the state courts, as he asserted in ground 43 of his Petition.

**Discussion**

I will deny Mote's petition because all of his claims are procedurally defaulted and there is no basis in the record for excusing these defaults.

Before a federal court will review the merits of a Petition for a Writ of Habeas Corpus, a Petitioner must overcome several procedural hurdles. Specifically, the Petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

---

[1]     Mote skipped Ground 36 and went from Ground 35 to Ground 37 in his Petition.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a Petition for a Writ of Habeas Corpus. 28 U.S.C. § 2254(b) and (c). To be properly exhausted, each claim must have been "fairly presented" to the state courts. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Id.*

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because the Petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

To determine if a claim is procedurally defaulted, the court must determine whether: (1) there is a state procedural rule that is applicable to the Petitioner's claim and that the Petitioner failed to comply with the rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

A claim that is procedurally defaulted in state court will not be reviewed by a federal habeas court unless a Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751.

All of the Petitioner's grounds for relief are procedurally defaulted. All of his 43 claims could and should have been raised on direct appeal, but Petitioner did not assert them at that time. Indeed, he did not even seek discretionary review in the Ohio Supreme Court during his direct appeal.

Furthermore, petitioner did not exhaust any of his claims while litigating his Application to Reopen.

Although Ohio Appellate Rule 26(b) allows a direct appeal to be reopened, the Petitioner must establish that his failure to assert certain claims on direct appeal was due to ineffective assistance of appellate counsel. Yet the Petitioner did not even claim ineffective assistance of counsel in his Application to Reopen. What's more, an Application to Reopen cannot preserve, for later federal habeas review, those claims that appellate counsel failed to pursue; it preserves only the ineffective-assistance-of-appellate-counsel claim itself. Consequently, the Petitioner did not exhaust any of his 40 claims by raising them in the Application to Reopen. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).

The Petition does not suggest, moreover, that "cause" precluded him from raising these claims in his first appeal of his conviction. He does not offer any explanation for failing to assert these claims on direct appeal. Nor has the Petitioner made a credible actual-innocence claim. While Petitioner challenges the jury's finding of fact and the state's case against him, legal insufficiency is not the same thing as actual innocence.

For these reasons, there is no basis on which to excuse the Petitioner's defaults, and the Petitioner is therefore not entitled to habeas relief.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Petitioner's Application to Proceed *In Forma Pauperis* (Doc No. 2) be, and the same hereby is, granted;

2. The petition for a writ of habeas corpus (Doc. 1) be, and the same hereby is, denied

3. No certificate of appealability will issue, as reasonable jurists would not debate the court's procedural-default ruling; and

4. The court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge